**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

EDWARD HARRISON,

                                        Plaintiff,

            v.                                                          No. 08-CV-1327
                                                                            (NAM/DRH)

B. FISCHER, Commissioner, DOCS; YELICH,
Superintendent, Bare Hill Correctional Facility;
MR. STEARNS, Dep. of Programs, Bare Hill
Correctional Facility; MR. D. BRADFORD,
ASAT Program Head; MR. DONALDSON,
Supervisor, IGRC, Bare Hill Correctional
Facility; MRS. DAGGOT, Senior Counselor,
Bare Hill Correctional Facility; MRS. BARNEY,
Head ASAT Counselor, Bare Hill Correctional
Facility; MRS. JOHNSTON, ASAT Program
Aide, Bare Hill Correctional Facility; and MR.
GILBERT, ASAT Program Aide, Bare Hill
Correctional Facility,

                                        Defendants.
_____

**APPEARANCES:**                              **OF COUNSEL:**

EDWARD HARRISON
Plaintiff Pro Se
Bordon Avenue Veterans Shelter
21-10 Bordon Avenue
Long Island City, New York 11101

HON. ANDREW M. CUOMO                  ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the                      Assistant Attorney General
    State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]
_____

            [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Plaintiff pro se Edward Harrison ("Harrison"), formerly an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, a DOCS Commissioner, Superintendent, and seven DOCS employees, violated his constitutional rights under the Eighth and Fourteenth Amendments. Compl. (Dkt. No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 37. Harrison failed to respond to the motion. For the following reasons, it is recommended that defendants' motion be granted.

## I. Failure to Respond

Harrison did not oppose defendants' motion. "Summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Defendants provided such notice in their Notice of Motion here. Dkt. No. 37. Despite this notice, Harrison failed to respond. "The fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." Champion, 76 F.3d at 436. Even in the absence of a response, a defendant is entitled to summary judgment only if the material facts demonstrate his or her entitlement to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

Because Harrison has not responded to raise any question of material fact, the facts as set forth in defendants' Rule 7.1 Statement of Material Facts (Dkt. No. 37-1) [hereinafter "Defs. Statement"] are accepted as true. See e.g., Lopez v. Reynolds, 998 F. Supp. 252, 256 (W.D.N.Y. 1997)); see also N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not

specifically controvert.") (emphasis in original).


## II. Background

All of the relevant events occurred during Harrison's incarceration at Bare Hill

Correctional Facility ("Bare Hill") from December 2007 until February 2008.  Defs.

Statement ¶¶ 1-2.

During this time period Harrison was participating in the Residential Alcohol and

Substance Abuse Treatment Program ("ASAT").  Defs. Statement  ¶ 4.  Harrison did not

believe he required ASAT and threatened to sue all ASAT and DOCS personnel connected

with the ASAT programming.  Id. ¶¶ 5-6.  Despite his threats, Harrison began the ASAT

program on November 5, 2007.[2]  Id.  ¶ 7.  Harrison was also transferred to a different dorm,

---

[2] To the extent that Harrison's complaint is liberally construed to include a claim that his placement in ASAT violated his Fourteenth Amendment rights, such contentions are without merit.  Contrary to his contentions,

> It is the policy of the Department of Correctional Services to recommend [ASAT] programming for all inmates with a history of alcohol or drug abuse. Although previous policy informally exempted inmates who demonstrated a period of abstinence of 10 years or more, the current policy provides no such relief because of evidence that individuals with a history of drug or alcohol abuse can readily relapse even after many years of abstinence.

Rodriguez v. Goord, 50 A.D.3d 1328, 1328 (3d Dep't 2008) (emphasis added); see also Gomez v. Goord, 34 A.D.3d 963, 964 (3d Dep't 2006) (explaining that the ASAT program gives staff "the authority to refer inmates . . . based on institutional records or self-reports indicating alcohol . . . abuse," and deferring to DOCS' "considerable discretion in determining the program needs of inmates . . . .").  As indicated, DOCS policy allows and encourages referral of any inmate with a history of substance abuse to undergo treatment while incarcerated.  Harrison's criminal and personal history made him a candidate for the program under DOCS guidelines.  See, e.g., Dkt. No. 37-3 at 5 ("[Y]our recommended program need for ASAT is based on your record indicating a history of alcoholism and

where all ASAT participants were housed.  Id.  ¶¶ 8-9.  Harrison's ASAT Program Director was defendant Johnson.  Id.  ¶10.

As Program Director, Johnson was responsible for facilitating group sessions, preparing monthly progress reports, and scoring the inmate's progress in ASAT.  Defs. Statement ¶ 18.  Johnson was also "authorized to assign learning experiences to individual inmates, and to the dorm as a whole, to address behaviors and attitudes that she deemed to be contra-therapeutic to the individual's progress in ASAT or to the therapeutic environment of the ASAT community."  Id.  ¶ 21.

On January 18, 2008, Harrison turned in his responses to two learning experiences previously assigned to him by Johnson.  Defs. Statement ¶ 22.  Johnson believed the responses Harrison submitted were personally threatening and harassing.  Id.  ¶ 23.  Johnson reported her concerns to the security personnel in a misbehavior report dated January 18, 2008.  Id.  ¶ 24.  Harrison was found guilty of harassment at a subsequent disciplinary hearing.  Id.  ¶ 25.  As a result, Harrison was penalized with cube confinement and a loss of commissary, telephone, package and recreation privileges for twenty-one days.  Id.  ¶ 26.  Harrison was also transferred to a different dormitory.  Id.  ¶ 27.

_____

cocaine addiction.  It also indicates that cocaine was used at the time of your arrest.")  Thus, it is beyond question that under DOCS Policy, Harrison was appropriately assigned into the program.  The Supreme Court has held that "[a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not . . .  constitute [an] atypical and significant hardship [ ] in relation to the ordinary incidents of prison life."  McKune v. Lile, 536 U.S. 24, 37-38 (2002).  "Since 'most offenders will eventually return to society, [a] paramount objective of the corrections system is the rehabilitation of those committed to its custody.' " Id. at 36 (quoting Pell v. Procunier, 417 U.S. 817, 823 (1974)).  Therefore, no due process deprivation has been pled by Harrison.

Harrison then filed a grievance[3] alleging that "Johnson was showing favoritism to white inmates and making disparaging comments to him in front of her supervisor and improperly supervising the ASAT dorm."  Defs. Statement ¶ 28.  These complaints were investigated by defendant Daggat, a supervising correction counselor.[4]  Id.  ¶¶13, 30.  Daggat "found that [Harrison]'s allegations . . . were unfounded and possibly retaliatory, and that the actions taken by . . . Johnson were appropriate."  Id.  ¶ 31.  Superintendent Yelich , a defendant here, relied on Daggat's report and concluded Harrison's grievance was unfounded.  Id.  ¶ 32.  The Superintendent's determination was never appealed.  Id.  ¶ 33.  Simultaneously, defendant Bradford responded to Harrison's letters of complaint about the investigative report prepared by Daggat.  Id.  ¶ 34.

On January 23, 2008, Harrison was issued another misbehavior report for an altered item.  Defs. Statement ¶ 35.  Because of these disciplinary infractions, on January 25, 2008, ASAT personnel held a case conference to determine whether Harrison's continued participation in the ASAT program was therapeutically appropriate.  Id.  ¶¶ 36-37.  The conference was attended by defendant Gilbert and two other unnamed parties.  Id.  ¶ 38.  The members "determined that [Harrison] should be placed on probation and required to write a letter of apology to . . . Johnson as a learning experience for his harassing

---

[3]"The IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

[4] Defendant Stearns forwarded Harrison's letters of complaint and grievances for investigation by Daggett.  Defs. Statement ¶ 57.

statements." Id. ¶ 39.  Harrison was informed that this letter was due on February 1, 2008, and that any further counseling notifications or misbehavior reports would result in an unsatisfactory discharge from ASAT.  Id. ¶ 40.

Subsequently, Harrison filed a grievance alleging that he had been threatened at the case conference and that Johnson's actions in assigning the learning experiences were racially motivated.  Defs. Statement ¶ 41.  These complaints and the grievance were again thoroughly investigated by Daggett who "determined that the actions taken by staff were appropriately taken in accordance with standard practice and procedure based upon [Harrison's] transfer to the E-1 dorm and his disciplinary infractions." Id. ¶¶ 42-43.

Harrison did not timely complete the assigned learning experiences.  Defs. Statement ¶ 44.  Harrison was given a counseling notification for his failure to complete his assignments and was also found guilty at his second disciplinary hearing for his misbehavior report on possessing an altered item. Id. ¶¶ 45-46.  A subsequent counseling conference was held on February 5, 2008 to discuss Harrison's failure to timely complete his assignments and the most recent disciplinary hearing whereupon it was recommended that "the most therapeutically sound response . . . was to unsatisfactorily discharge [him] from ASAT as was warned in the January 25, 2008 case conference." Id. ¶¶ 47, 49.  Harrison was discharged from the program on February 5, 2008 for ninety days. Id. ¶ 50. Gilbert signed Harrison's discharge form. Id. ¶ 51.  The decision was also approved by Daggett "based upon [Harrison]'s unsatisfactory program record, the disciplinary infractions he received while participating in ASAT, and his failure to comply with the terms of the January 25, 2008 case conference report." Id. ¶ 52.

Harrison filed another grievance, claiming that his removal from the ASAT program

"was unfair and excessive."  Defs. Statement ¶ 53.  The grievance was referred to the

Superintendent by the IGRC, denied by Superintendent Yelich, appealed to CORC, and

denied because it was meritless.  Id.  ¶ 54.  This action followed.


## III.  Discussion

Harrison alleges that his experiences in ASAT and his subsequent removal from the

program and loss of good time credits resulted in an extension of his imprisonment and

cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

Defendants seek judgment because (1) Harrison has failed to establish the personal

involvement of defendants Fischer, Bradford, Yelich, Stearns, and Donaldson; (2) loss of

good time credits is insufficient to establish a § 1983 claim; (3) Harrison failed to exhaust

his administrative remedies; (4) Harrison's constitutional claims are meritless; and (5)

defendants are entitled to qualified immunity.


## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

material fact if supported by affidavits or other suitable evidence and the moving party is

entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

### B. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

8

supervisory officials may not be held liable merely because they held a position of authority.

Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may

be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional
> violation;
>
> (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of
> such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates
> who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

323-24 (2d Cir. 1986)).


### 1. Fischer and Donaldson

The gravamen of Harrison's complaint against defendant Fischer, the DOCS

Commissioner, is that he was a poor supervisor.  However, a position in a hierarchical chain

of command, without more, is insufficient to support a showing of personal involvement.

Wright, 21 F.3d at 501.  Moreover, it is undisputed that neither Fischer nor Donaldson were

personally involved in the alleged constitutional violations occurring during ASAT and the

subsequent disciplinary hearings.

Additionally, to the extent Harrison argues personal involvement based upon continually

sending the Commissioner complaints and grievances, such allegations are also meritless.
See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted)
(finding personal involvement only where a supervisory official received, reviewed, and
responded to a prisoner's complaint); Johnson v. Wright, 234 F. Supp. 2d 352, 363
(S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without
more, to constitute personal involvement, it would result in liability merely for being a
supervisor, which is contrary to the black-letter law that § 1983 does not impose
respondeat superior liability.") (citations omitted).  Similarly, receipt of a letter, without
personally investigating or acting on the letter or grievance, is insufficient to establish
personal involvement.  See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y.
2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193,  203 (S.D.N.Y. 2004).
Moreover, the complaint fails to allege facts sufficient to support the bald assertion that
Fischer failed to train any of the defendants or that he was grossly negligent.

Similarly, the complaint fails to establish any facts that Donaldson received or
responded to complaints or letters.  Additionally, the record fails to support any contentions
that Donaldson was involved with training the individuals involved in these alleged
constitutional violations or that he was grossly negligent in performing his employment
duties.

Accordingly, defendants' motion should be granted on this ground.


## 2. Bradley and Yelich

Conversely, defendant Bradley, Director of ASAT, "responded to [Harrison]'s letters of
complaint based upon the information provided in the investigation report prepared by . . .

Daggett."  Defs. Statement ¶ 34.  Similarly, defendant Yelich, Superintendent of Bare Hill,

"relied on [an] investigative report of staff and determined that [Harrison]'s grievance was

unfounded," constituting the original administrative ruling for this grievance.  Id. ¶¶ 32, 54.

Thus, Bradley proactively replied to Harrison based on a review of an investigation which,

although delegated to another person to complete, he still reviewed and responded to

accordingly.  See Bodie, 342 F. Supp. 2d at 203 (citations omitted) (finding personal

involvement only where a supervisory official received, reviewed, and responded to a

prisoner's complaint).

     Yelich also reviewed the investigation and made the initial grievance decision, for two

separate grievances, constituting a greater degree of personal involvement than merely

affirming a previously entered disposition; therefore, crossing the appropriate threshold to

establish personal involvement.  See Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y.

2002) ("The fact that [the] Superintendent . . . affirmed the denial of plaintiff's grievance –

which is all that is alleged . . . — is insufficient to establish personal involvement or to shed

any light on the critical issue of supervisory liability, and . . . knowledge on the part of the

defendant.") (internal quotation marks and citations omitted).  Additionally, Yelich decided

the first and last of three grievances, the first two of which outlined disparate treatment

based on race and the last discussing unfair and cruel prison conditions.  Defs. Statement

¶¶ 28, 41, 53-54.  Thus, Yelich was also continually involved in related alleged

constitutional violations all stemming from Harrison's problem with the ASAT staff. See

Harnett v. Barr, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with

a violation that has already occurred and is not ongoing, then the official will not be found

personally responsible for failing to 'remedy' a violation.").

For these reasons, defendants' motion on this ground should be denied.


### 3. Stearns

Sterns', Deputy Superintendent of Bare Hill, only involvement in this case consisted of him forwarding Harrison's letters of complaint to subordinates for investigation and response.  Defs. Statement ¶¶ 57-58.  Delegating the responsibility of investigation and report to the appropriate staff members is insufficient grounds to establish personal involvement.  See Sealy v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (holding that defendant's referral of a letter to another individual is insufficient to state personal involvement); Harnett v. Barr, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (explaining that there is a lack of personal involvement when "the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation.") (citations omitted); Garvin v. Goord, 212 F. Supp. 2d 123, 126 (W.D.N.Y. 2002) ("[W]here a commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a §1983 cause of action.") (citations omitted).

The complaint fails to allege, or establish, that Stearns was personally involved in any of the alleged constitutional violations.  Moreover, the complaint fails to allege facts sufficient to support any conclusory assertions that Stearns failed to train any of the defendants or that he was grossly negligent.

Accordingly, defendants' motion should be granted on this ground as to Stearns.

**C. Failure to Exhaust**

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 83 (2006).  This exhaustion requirement applies to all prison condition claims.  Porter, 534 U.S. at 532.  "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement."  Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate.  Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)).  Exhaustion for an inmate in DOCS custody is generally achieved through the IGP.  See note 3 supra. However, when inmates fail to follow the IGP, a court must conduct a three-part inquiry to determine if such failure is fatal to their claims.  A court must consider whether

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the action complained of."  Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v.

Churner, 532 U.S. 731, 738 (2001)).  The test to determine the availability of an administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible.  Id. at 688.

It is uncontested that Harrison failed to appeal his first two grievances that he was treated differently due to his race.  Defs. Statement ¶ 33; Yelich Decl. (Dkt. No. 37-4) ¶8.[5] The record shows that Harrison successfully used the IGP to exhaust his third grievance, thus it was apparent that Harrison was aware how the administrative system operated. Defs. Statement ¶ 54.  Harrison has failed to respond to defendants' motion to contend that there were appropriate reasons why he failed to exhaust his administrative remedies.  Even if such responses were proffered, any such contentions would be belied by Harrison's other successful attempts at exhaustion.

Thus, defendant's motion should be granted on this ground and defendants should be granted judgment as to all claims related to racial discrimination and equal protection.

---

[5] Defendants failed to note in their Statement of Material Facts whether the second grievance Harrison filed was appealed to CORC.  This information was definitively found in Yelich's declaration.  As there was no inconsistent information in the remainder of defendants Statement of Material Facts or other moving papers, it is assumed this failure to cite to this fact in the Statement was mere oversight.

**D. Due Process**[6]

Harrison alleges that defendants' actions caused him to be terminated from ASAT,

effectively forfeiting his good time credits, and extending the length of his incarceration.

Compl. at 9, 11-13.[7]  It is undisputed that inmates have no constitutionally protected interest

in parole, or other conditional release from prison, prior to the expiration of a valid sentence.

Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979).  The Second

Circuit has also held that inmates have no constitutionally protected liberty interest in

internal classifications or eligibility for rehabilitative programs.  See Pugliese v. Nelson, 617

F.2d 916, 923 (2d Cir. 1980).

---

[6] To the extent that Harrison's complaint could be liberally construed to contend that his twenty-one day cell confinement disposition was in contravention of his due process rights, such allegations are without merit.  The fact that an inmate has been disciplined with a segregated confinement alone is insufficient to establish an atypical and significant deprivation.  The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998).  The Second Circuit has noted that where the period of segregated confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims . . . ."  Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000).  As Harrison has failed to contend that he was confined in anything other than normal conditions, and this confinement did not exceed thirty days, he has failed to establish a due process violation.

[7] While not specifically stated, it appears that Harrison is contesting his termination from ASAT and its subsequent effect on his ability to accrue good time credits for early release.  See Compl. at 9 ("I was thrown [sic] out and I had my good time taken by Dep. of Programs . . . .").  Harrison does not appear to be contending that he was unable to use already obtained good time credits at any time during his incarceration.  Such claims, specifically the preclusion of "*already-earned* good time credit as a result of expulsion from the Program[, should be addressed pursuant to a writ of habeas corpus as it i]s a prisoner's sole recourse in challenging the procedures used to deny him good-time credits."  Fifield v. Eaton, 669 F. Supp. 2d 294,  297 (W.D.N.Y. 2009) (citations omitted) (emphasis in original).  As Harrison is no longer incarcerated, this analysis would be challenging; however, as it is not the question presented it will not be further discussed.

Additionally, the Second Circuit has concluded that inmates have "no constitutional right to discretionary good time release, or to participation in prison programs which expedite release. Fifield v. Eaton, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009) (citations omitted); see also Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000) ("Although inmates have a liberty interest in good time credits they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here prison officials have discretion to determine whether an inmate . . . is eligible to earn good time credit."); N.Y. Correct. Law § 803(a) (explaining that inmates may receive credit to reduce their sentence for "good behavior and efficient and willing performance . . . in an assigned treatment program [but] may [also have such credits] be withheld, forfeited or canceled in whole or in part for . . . failure to perform properly in the . . . program assigned."). Thus, to the extent the complaint seeks compensation due to Harrison's presumed inability to accumulate good time credits after his removal from the ASAT program, such allegations are insufficient to survive summary judgment. Fifield, 669 F. Supp. 2d at 297 ("Accordingly, plaintiff's due process claim relating to lost opportunities to earn good time credits must be dismissed.").

Therefore, defendants' motion should be granted on this ground.


### E. Conditions of Confinement

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to prison conditions. Horne v. Coughlin, 155 F.3d 26, 31 (2d Cir. 1998). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are

16

subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832

(1970). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . .

. and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted).

    The objective prong can be satisfied by

> conditions of confinement . . . [which] in combination [constitute
> an Eighth Amendment violation] when each would not do so
> alone . . . [such as] when the conditions have a mutually
> enforcing effect that produces the deprivation of a single,
> identifiable human need such as food, warmth, or exercise – for
> example, a low cell temperature at night combined with a failure
> to issue blankets.

Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (citations omitted).

However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and

unusual punishment when no specific deprivation of a single human need exists." Id. (citing

Wilson v. Seiter, 501 U.S. 294, 304-05 (1991)).  The subjective prong requires "a prison

official [to] have a sufficiently culpable state of mind . . ., of deliberate indifference to inmate

health or safety" Farmer, 511 U.S. at 834 (citations omitted).

    In this case, neither Harrison's disciplinary cell confinement of twenty-one days nor his

termination from the ASAT program constitute cruel and unusual punishment.  First,

administrative segregation for twenty-one days, without any other allegations of unusual

conditions or circumstance, does not constitute cruel and unusual punishment.  See

McDonald v. Rivera, No. 06-CV-410 (LEK/DEP), 2008 WL 268345, at *8 (N.D.N.Y Jan. 30,

2008) ("[T]he allegation that plaintiff was placed in keeplock confinement under otherwise

normal conditions for thirty days similarly does not establish a claim of cruel and unusual

punishment.") (citing Jackson v. Johnson, 12 F. Supp. 2d 341, 363 (S.D.N.Y. 1998) ("The

mere placement in keeplock for 99 days is not sufficiently egregious to constitute cruel and

unusual punishment under the Eighth Amendment.")).  Additionally Harrison has failed to allege, and the record fails to demonstrate, anything but an amorphous and conclusory claim of unconstitutional conditions without actually specifying which conditions were cruel and unusual.  Accordingly, such contentions are also insufficient to withstand a motion for summary judgment.  Davidson, 371 F. Supp. 2d at 370 (citations omitted).

Second, discharge from prison programming is also not a constitutional violation. See LaBounty v. Adler, 933 F.2d 121, 124 (2d Cir. 1991) ("[E]xclusion from the prison's maintenance electrician program[] does not even constitute 'punishment,' let alone punishment that is 'cruel and unusual.'"); Allah v. Juchnewioz, No. 93-CV-8813, 1999 WL 562100, at *5 (S.D.N.Y. July 30, 1999) (concluding that placement in administrative segregation for two weeks, and missing eight college classes, was insufficient to establish a denial of life's necessities.") (internal quotation marks and citations omitted).  In this case, as discussed in Allah, Harrison received a similar disciplinary disposition and also was prevented from attending a special program.  Unlike the inmate in Allah, Harrison was prevented from attending the program for much longer, three months.  However, this termination came after multiple warnings and compromises between himself and the staff with which he failed to comply.  Despite the increased length of prohibition, the action still did not constitute punishment.  Thus, the same reasoning applies and Harrison's preclusion from the program does not constitute a denial of life's necessities.

Lastly, as previously discussed, the ASAT program serves an important penological purpose and inmate's are not guaranteed enrollment in special programs or early release. Therefore, the fact that Harrison was enrolled in ASAT and then his participation was terminated and he was forced to serve his entire prison sentence is neither cruel nor

unusual.

Accordingly, defendants' motion for summary judgment should be granted on this ground.

## F. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Vegas v. Artus, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and citations omitted).

In this case, Harrison has failed to establish how he was treated differently than other inmates in ASAT.  All Harrison offers are conclusory allegations that ASAT staff treated white and black inmates differently.  Those allegations, without more, are insufficient to withstand a motion for summary judgment.  See, e.g., Marrero v. Kirkpatrick, 659 F. Supp. 2d 422, 424-25 (W.D.N.Y. 2009).

Accordingly, defendants' motion should be granted on this ground.

## G. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights . . . immunity might still be available as a bar to . . . suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights."   Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991) (citations omitted).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Harrison's allegations as true, he has not shown that any of defendants violated his constitutional rights.

Accordingly, it is recommended in the alternative that defendants' motion on this ground be granted.

**Iv.  Conclusion**

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for

summary judgment (Dkt. No. 37) be **GRANTED** as to all defendants and that judgment be

entered in favor of all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen

(14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c)

(citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d

85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  June 7, 2010
       Albany, New York

United States Magistrate Judge